# EXHIBIT 3

RECEIVED
CENTRAL FAX CENTER
APR 3 0 2004

**OFFICIAL**

PATENT
ATTORNEY DOCKET NO. 10491-18

### IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| In re Application of: | McAuley | | |
| Serial No.: | 09/410,334 | Examiner: | John Q. Chavis |
| Filed: | September 1, 1999 | Group Art Unit: | 2124 |
| Title: | SYSTEM AND METHOD FOR GENERATING WEB SITES IN AN ARBITRARY OBJECT FRAMEWORK | | |

Commissioner for Patents
Washington, D.C. 20231

### RESPONSE TO OFFICE ACTION

Sir:

This paper responds to the Office Action of January 30, 2004.

### CONTENTS

An Authorization To Debit Account begins on page 2 of this paper.

Remarks begin on page 3 of this paper.

A Conclusion begins on page 14 of this paper.

BRMFSLA 43318

1

PAGE 4/17 * RCVD AT 4/30/2004 7:31:33 PM [Eastern Daylight Time] * SVR:USPTO-EFXRF-2/0 * DNIS:7467239 * CSID:3107128383 * DURATION (mm-ss):08-48

Attorney Docket No.: 10491-18
Serial No. 09/410,334

In addition to the Office Action's incorrect assertion that the elements of the claimed invention can be found in the combination of *Lewandowski* and the Background Section of the present application, the Office Action asserts that *Ferrel* provides for a separate content, form and functionality objects. However, neither the *Lewandowski* reference, the Background Section of the present application, nor *Ferrel*, alone or in combination, suggest the claimed invention—namely, a system and method of generating a computer application that "separates a content...a form...and a functionality of a computer application," and "creat[es] arbitrary objects...for generating said content...said form...and said functionality of said computer application," as recited in claim 1. Rather, each of those references highlights the shortcomings of the prior art that has been overcome by the claimed invention.

The claim chart in the January 30, 2004 Office Action re-asserts that the combination of *Lewandowski* and the purported admission in the Background Section of the specification discloses every element of claim 1. As stated in Applicant's September 2, 2003 Response, nothing in *Lewandowski* discloses generating a computer application that "separates a content...a form...and a functionality of a computer application," and "creat[es] arbitrary objects...for generating said content...said form...and said functionality of said computer application," as recited in claim 1. Further, as stated above, there is no "background acknowledgement" or suggestion in the Background Section of the present application that this feature is disclosed by any prior art reference. Respectfully, the January 30, 2004 Office Action has again misconstrued the portion of the Background Section in support of its position.

6

Attorney Docket No.: 10491-18
Serial No. 09/410,334

In the claim chart entry for the 1st step, the January 30, 2004 Office Action re-alleges (as in the April 3, 2003 Office Action), "Although, [sic] it is considered inherent that content is a separate object in *Lewandowski's* system, the feature may be argued since is not specifically stated." The January 30, 2004 Office Action further re-alleges that the Applicant "admits that the feature existed in the prior art on page 3 lines 18-29 to help minimize dependencies between interface designs and the functions they access."

As explained in Applicant's September 2, 2003 Response, the allegation that a separate object for content is admitted in the Specification is, respectfully, far from accurate. To reiterate, (because the January 30, 2004 Office Action fails to address Applicant's explanation in the September 2, 2003 Response), the precise language from page 3 lines 18-29 recites:

> Prior art solutions have succeeded in partially separating some of these functions. Notably, <u>content management databases and digital repositories provide a means of separating content from form and function</u>. Likewise, sophisticated software development teams frequently employ <u>internal code structuring techniques that can help to minimize dependencies between interface designs and the functions they access</u>. However, <u>content management tools typically fail to address form/function issues.</u> Therefore, there can still be production slow-downs due to changes in form that require a subsequent change in functionality. (emphasis added).

As can readily be seen from the actual language from the section cited by the Office Actions, Applicant does <u>not</u> acknowledge or otherwise admit that creating arbitrary objects for generating separate content, form, and functionality of a computer program is disclosed in the prior art. The cited passage refers to "content management databases," "digital repositories," and "internal code structuring techniques" which have been used in <u>failed attempts</u> to solve the problem of changes in functionality affecting content and form of the computer program, and vice versa.

7

Attorney Docket No.: 10491-18
Serial No. 09/410,334

Clearly, Applicant's reference to the failed techniques of the prior art does not admit or imply separating content, form, and functionality, using arbitrary objects in a computer program.

Further, the *Lewandowski* reference does NOT, in fact, teach creating arbitrary objects for generating separate content, form, and functionality of a computer program. Respectfully, as did the April 3, 2003 Office Action, the January 30, 2003 Office Action again misinterprets Figure 10 on page 22 of the *Lewandowski* reference to allege that a business logic object ("BLO") is used to generate content, a presentation object is used to represent form, and a business process object ("BPO") is used to represent functionality. As described on page 22 of the *Lewandowski* reference, the BLO defines how the object reacts to certain events, which clearly is a functional operation, not a content characteristic. Although the BLO is described as storing some business data, the BLO mixes the storing of business data with this functional component. Thus, the BLO of the *Lewandowski* reference still fails to resolve the problems associated with mixing content and functionality in a program. Accordingly, the *Lewandowski* reference still suffers from the same types of shortcomings that are specifically designed to be overcome by the claimed invention.

Moreover, the *Lewandowski* reference plainly states that the "primary difference between a BPO and a BLO is the logical lifetime of the unit of logic: BPOs traditionally handle long-lived processes or processes related to the system as a whole." Thus, to the extent that the BPO is a functional object, so is the BLO, the BLO consisting of shorter-lived processes or processes not necessarily related to the system as a whole.

8

Attorney Docket No.: 10491-18
Serial No. 09/410,334

*Lewandowski* also states that the three objects are "managed by one object...." As described herein, one advantage of the claimed method is that <u>the three object types operate separately from each other</u>, and therefore, changes on one object type would not affect the other object types. In contrast, given that the objects in the *Lewandowski* reference are managed by one object, if the managing object changes, then it will likely be necessary to change the other three objects, and vice versa.

The diagram illustrating *Lewandowski's* application layers in Figure 11 of page 23, is particularly illustrative of *Lewandowski's* failure to separate content and functionality using objects. See below:



The application logic layer, or tier as *Lewandowski* calls it, includes both application logic and data implementation. This is clearly contrary to, and disadvantageous when compared with, the claimed method of the present application. Changes in the format of the data in the *Lewandowski* reference, for example, can clearly affect the functioning of the application logic. Thus, it is abundantly clear that the *Lewandowski* reference has not truly separated content, form,

9

Attorney Docket No.: 10491-18
Serial No. 09/410,334

and functionality, using arbitrary objects in a computer program, as required by the claimed invention.

However, Figure 2 of the present application illustrates that the interaction of the content, form, and functionality objects are clearly distinct from the objects utilized in the *Lewandowski* reference.



FIG. 2

Thus, as clarified in the Figure 2, there is no overlap or sharing of layers with the claimed invention of the present application.

Seemingly as an alternative to the purported "admitted art", the January 30, 2004 Office Action asserts that *Ferrel* provides for the purported admitted feature. However, *Ferrel* does not describe an application that separates content, form, and functionality using arbitrary objects. Instead, *Ferrel* specifically discloses a multimedia publishing system where the format and content can be separated and uploaded to a server by a publisher. There is no computer application described in *Ferrel* with functionality using arbitrary objects. Rather, *Ferrel* describes a form that reads tagged files containing text and other material to be published so that

10

Attorney Docket No.: 10491-18
Serial No. 09/410,334

different forms may be used to display content (see col. 5, lns. 52-59). In order for the forms to read the content, tags must be included in the content, which are then used by the forms to display the content. (see col. 5, lns. 52-59, and TABLE 1, col. 34, lns. 21-32). In other words, strict integration is necessary between the embedded tags in the content and the forms. Without this integration, the forms will not function properly with the content. In fact, the forms described in *Ferrel* only support a few tagged content formats (see col. 27, lns. 37-42). Thus, there is no true separation of form and content described in *Ferrel*.

Moreover, *Ferrel* merely describes a system that achieves only one "function," if at all—specifically, to present (publish or print) the structured content using the forms. There is no other function described in *Ferrel*, and the forms and structured content are integrated to only serve this one purpose. Hence, there is no separate functionality, content and form described in *Ferrel*, and there is no disclosure or suggestion to create arbitrary objects to accomplish this separation.

In order to further explain the differences between the cited art, and the claimed invention, the Applicant will now repeat some of the advantages explained in the September 2, 2004 Response. Separating form, content, and function using arbitrary objects achieves many advantages in accordance with the claimed invention. One such advantage is that when content, form, and functionality are genuinely separated in the generation of a software application (as opposed, for example, merely using forms to display tagged content as in *Ferrel*), changes in one do not affect the other (See pg. 4, line 24 - pg. 5, line 2). In *Ferrel*, for example, if a form is

11

PAGE 14/17 * RCVD AT 4/30/2004 7:31:33 PM [Eastern Daylight Time] * SVR:USPTO-EFXRF-2/0 * DNIS:7467239 * CSID:3107128353 * DURATION (mm-ss):08-45

Attorney Docket No.: 10491-18
Serial No. 09/410,334

changed to require a new tagged portion of the content, the content must be changed to conform with that change.

Another advantage to generating arbitrary objects for separating form, content and functionality in a computer program is that users are not required to use a proprietary language to encode the computer program. This allows, for example, the form of systems with legacy content to be updated without affecting the content and functionality of the legacy system (See pg. 5, lines 3-11). In contrast, the forms described in *Ferrel* require a specific, proprietary, tagged language that is recognized by the forms.

Other advantages to generating arbitrary objects for separating these parts of a computer program include allowing single point administrative authority that can reduce security risks, syndication of the software application, and personalization and profiling (See pg. 5, line 12 – pg. 6, line 5). None of these advantages can be achieved using any combination of the systems described in the cited art.

In light of the above, the Applicant believes that the 35 U.S.C. §103(a) rejection of claim 1 has been traversed, and claim 1 is in condition for allowance. For the same reasons, Applicant submits that independent claim 26 is in condition for allowance. Claims 2-8, 11-18, 20-21 and 25 depend from claim 1, and claims 27-40, 42-44, 50-51 and 53 depend from claim 26, and therefore, these claims are each in a condition for allowance as well. The Applicant does not herein address the specific rejections for each of those claims because each of those claims depends from one of independent claims 1 and 26, and thus, those claims are allowable based on the allowability of claims 1 and 26. However, the Applicant reserves the right to address the

12

PAGE 15/17 * RCVD AT 4/30/2004 7:31:33 PM [Eastern Daylight Time] * SVR:USPTO-EFXRF-2/0 * DNIS:7487239 * CSID:3107128383 * DURATI N (mm-ss):08-46

Attorney Docket No.: 10491-18
Serial No. 09/410,334

specific rejections of claims 2-8, 11-18, 20-21, 25, 27-40, 42-44, 47, 50-51 and 53 should it be necessary to do so.

    3. <u>Response to Rejections of Claims 9-10, 19, 22-24, 41, 45-46, 48-49 and 52 under 35 U.S.C. §103(a)</u>.

The Office Action asserts that pending claims 9-10, 19, 22-24, 41, 45-46, 48-49 and 52 were rejected under 35 U.S.C. §103(a) as being unpatentable over *Lowandowski* in view of Applicant's purported admitted prior art and *Ferrel*, and further in view of *Gish* (U.S. Patent No. 6,269,361). Claims 9-10, 19 and 22-24 depend from claim 1, and claims 41, 45-46, 48-49 and 52 depend from claim 26. <u>As with *Lowandowski* and *Ferrel*, *Gish* also does not disclose a method for generating a computer application or web site on a host system that separates content, form and functionality of the computer application or web site, and creating arbitrary objects for generating the content, form and functionality thereof, as claimed in claims 1 and 26.</u> Therefore, Applicant believes that the rejection of claims 9-10, 19, 22-24, 41, 45-46, 48-49 and 52 has been traversed. Further, in view of the allowability of claims 1 and 26 described above, the Applicant believes that the rejection of claims 9-10, 19, 22-24, 41, 45-46, 48-49 and 52 are each in a condition for allowance based on their dependency on claims 1 and 26.[1]

---

[1] Although no arguments have been advanced for the independent patentability of the subject matter of the dependent claims, the Applicant does not acquiesce in the rejection thereof for the reasons advanced in the Office Action, and reserves the right to advance appropriate arguments for patentability of those claims independent of the reasons advanced for patentability of claims 1 and 26 in this or a subsequent proceeding if the patentability or validity of claims 1 or 26 are called into question.

13

Attorney Docket No.: 10491-18
Serial No. 09/410,334

## CONCLUSION

The Applicant has made an earnest and bona fide effort to clarify the issues before the Examiner and to place this case in condition for allowance. In view of the foregoing discussions, it is clear that the differences between the claimed invention and the prior art are such that the claimed invention is patentably distinct over the prior art. Further it is clear that all of the claimed inventions have been enabled. Therefore, reconsideration and allowance of all of claims 1-53 are believed to be in order, and an early Notice of Allowance to this effect is respectfully requested. If the Examiner should have any questions concerning the foregoing, the Examiner is invited to telephone the undersigned attorney at (310) 712-8311. The undersigned attorney can normally be reached Monday through Friday from about 9:30 AM to 5:30 PM Pacific Time.

Respectfully submitted,

Dated: April 30, 2004

IVAN POSEY
Reg. No. 43,865
BROWN RAYSMAN MILLSTEIN FELDER
& STEINER LLP
1880 Century Park East, Suite 711
Los Angeles, California 90067
(310) 712-8300

PAGE 17/17 * RCVD AT 4/30/2004 7:31:33 PM [Eastern Daylight Time] * SVR:USPTO-EFXRF-2/0 * DNIS:7467239 * CSID:3107128383 * DURATION (mm-ss):08-46